UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
2021 MAY 26 PM 2:25

HENRY L. McCONE,

      Plaintiff,

  vs.

EXELA TECHNOLOGIES, INC. and

EXELA ENTERPRISE SOLUTIONS,

INC.

      Defendants

Case No.: 6:21-cv-912-CEM-DCI

COMPLAINT FOR
DECLARATORY
JUDGMENT, INJUNCTIVE
RELIEF, COMPENSATORY
AND PUNITIVE DAMAGES

DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    This is an action for retaliation and discrimination pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 and the Americans with Disabilities Act, 42 U.S.C. §12101, etseq. ("ADA"),

## JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court by Sections 703(a), 704(a), 706(f)(1), 706(f)(3), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for retaliation. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §2000e-5(f); 42 U.S.C. §

2000e-3(a). Equitable and other relief is sought under 42 U.S.C. § 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Furthermore, the jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiffs claims are substantively based on Title VII and the ADA.

3.      Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b) and employs 50 or more employees.

## *Venue*

4.      Defendants operate their business within the Middle District of The State of Florida. All actions by Defendants alleged herein occurred within the Middle District of The State of Florida. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## **PARTIES**

5.      Plaintiff, HENRY MCCONE (McCone) is a natural person and United States citizen and a resident of Orange County, Florida during all relevant times of this action.

6.     Defendant, EXELA TECHNOLOGIES, INC. (exela tech) is a for-profit corporation with its principal place of business at 2701 East Grauwyler Rd., Irving, Tx, 75061.

7.     Defendant, EXELA ENTERPRISE SOLUTIONS, INC f/k/a NOVITEX ENTERPRISE SOLUTIONS, INC. f/k/a PITNEY BOWES MANAGEMENT SERVICES, INC (exela) is a for-profit corporation with its principal place of business at 300 First Stamford Place 2nd Fl Stamford, CT 06902.

## FACTUAL BACKGROUND

8.     Exela tech performs operational decision making for Defendant Exela.

9.     Exela tech performs, provides and participates in human resource, employee training, and management decision making for employees of Defendant Exela.

10.     Exela tech has financial control and interests over Defendant Exela.

11.     Defendants have interrelated operations, centralized control of labor, common management, and maintain common ownership and/or financial control with one another.

12.     In 2011, McCone filed a complaint with the Equal Employment Opportunity Commission (eeoc) alleging employment gender/sex discrimination against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc.

13.     In 2011, McCone filed a complaint with the Florida Commission on Human Relations (FCHR) alleging gender/sex discrimination against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc.

14.     The 2011 complaint with the EEOC alleging gender/sex discrimination against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc was a dual filing with FCHR.

15.     On or about September 11, 2012, the EEOC sent a Dismissal and Notice of Rights to the McCone.

16.     On December 29, 2014, McCone filed a complaint for discrimination in The Circuit Court Of The Ninth Judicial Circuit in and For Orange County, Florida against Exela (CASE NO.: 2014-CA-13224).

17.     On October 21, 2020, McCone filed for declaratory judgment against Exela in the United States District Court, Middle District Of Florida,

Orlando Division (Case No.: 6:20-cv-01946-CEM-EJK) concerning events in the discrimination case (CASE NO.: 2014-CA-13224).

18.    On November 28, 2020, McCone suddenly started to exhibit symptoms of Covid-19 of chills, body aches and headaches without fever temp of 100.4° F of more and without breathing problems.

19.    On November 29, 2020, McCone called Debbie Cole who was a manager with Exela that McCone reported to.

20.    McCone informed Debbie Cole on November 29, 2020 that he had been exposed to covid-19.

21.    On November 29, 2020, Debbie Cole instructed McCone to take off from work for the next two weeks.

22.    On November 29, 2020, Debbie Cole instructed McCone to contact "Lincoln" and apply for leave under the Family and Medical Leave Act (FMLA).

23    On November 30, 2020, Debbie Cole sent McCone a text and stated "I need you to call Willie tomorrow and get the number for Lincoln to start a claim. It's no big deal but has to be done." **(Exhibit "A")**

24.    McCone contacted Lincoln Financial Group and applied for FMLA pursuant to Debbie Cole's instructions.

25. On December 1, 2020, Lincoln Financial Group sent McCone a letter requesting information including but not limited to "Provider Certification – Your doctor will need to complete this documentation that'certifies' your leave before I can approve your leave claim".

26. On December 2, 2020, McCone had no covid-19 related symptoms without taking any medication.

27. FMLA guidelines states "Eligible employees are entitled to:

- Twelve workweeks of leave in a 12-month period for:

    o the birth of a child and to care for the newborn child within one year of birth;

    o the placement with the employee of a child for adoption or foster care and to care for the newly placed child within one year of placement;

    o to care for the employee's spouse, child, or parent who has a serious health condition;

    o a serious health condition that makes the employee unable to perform the essential functions of his or her job;

- any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a covered military member on "covered active duty;" **or**

- Twenty-six workweeks of leave during a single 12-month period to care for a covered servicemember with a serious injury or illness if the eligible employee is the servicemember's spouse, son, daughter, parent, or next of kin (military caregiver leave)."

28.    The U.S. Dept of Labor employee guide state a "serious health condition" as:

> "A serious health condition is an illness, injury, impairment, or physical or mental condition that involves **inpatient care** or **continuing treatment** by a health care provider. The FMLA does not apply to routine medical examinations, such as a physical, or to common medical conditions, such as an upset stomach, unless complications develop. For all conditions "incapacity" means inability to work, including being unable to perform any one of the essential functions of the employee's position, or inability to attend school, or perform other regular daily activities due to the serious health condition, treatment of the serious health condition, or recovery from the serious health condition." (emphasis in the original)

29.    The symptoms that McCone described to Debbie Cole does not reach the level of a serious health condition to qualify for FMLA.

30.   On page 15 of the U.S. Labor Dept's "The Employer's Guide to the Family and Medical Leave Act" state:

> "An employer's management team and leave administrators play a vital role in ensuring FMLA compliance. Managers, assistant managers, supervisors and leave administrators must be able to recognize FMLA-qualifying reasons for leave and properly initiate the required notifications and eligibility checks."

31.   It is employer's management responsibility "to recognize FMLA-qualifying reasons for leave"

32.   Manager Debbie Cole instructed McCone to apply for FMLA while knowing or should have known that McCone didn't meet the FMLA guidelines to qualify for FMLA.

33.   Due to McCone being symptom free of covid-19 on Dec 3, 2020, McCone couldn't provide Lincoln Financial Group with certification of a serious health condition.

34.   Lincoln Financial Group sent McCone a letter dated Dec 16, 2020 that stated "We are writing to inform you that your leave under the Family & Medical Leave Act (FMLA) request for a leave of absence due to your own medical condition has been denied"

35.    McCone received an email from Debbie Cole on Dec 9, 2020 that stated "Henry, you can also get retested and bring the result in Monday, if it's negative and work. If it's positive you need to send it to me and stay off until you have a Dr. note or a negative result for your return."

36.    On Dec 9, 2020, McCone sent Debbie Cole and Betty Smith an email that stated:

> 'It appears that management isn't up to date with the covid guidelines. First the CDC state:
> (1) "Available data indicate that persons with mild to moderate COVID-19 remain infectious no longer than 10 days after symptom onset." (2)"On August 3, 2020, CDC updated its isolation guidance based on the latest science about COVID-19 showing that people can continue to test positive for up to 3 months after diagnosis and not be infectious to others." And (3) "Since August 2020, CDC has recommended *against* the need for retesting persons with asymptomatic infection within 90 days of first SARS-CoV-2 infection or illness because evidence *to date* suggests that reinfection does not occur within this time window (CDC Guidance on Duration of Isolation and Precautions for Adults with COVID-19)." (emphasis in the original)"

37.    On Dec 10, 2020, McCone sent an email to Debbie Cole and Betty Smith that stated;

> ""I want to add that the CDC also state "Employers should not require sick employees to provide a COVID-19 test result or a healthcare provider's note to validate their illness, qualify for sick leave, or to return to work.".

I have attached a copy of the document which is titled "General Business Frequently Asked Questions" and updated Dec 2, 2020. See page 10 of 21 under subsection "Healthy Business Operations"."

38.     On Dec 11, 2020, McCone received an email from human

resource manger Betty Smith that states

"Attached is a copy of our Attendance policy which states: "If an employee calls in sick for three or more consecutive workdays or have a pattern of absence the employee may be required to provide their supervisor with a doctor's note on the day the employee returns to work"

39.     McCone did not call in sick on or after Nov 29, 2020.

40.     McCone did not have a pattern of absence.

41.     On Dec 14, 2020, McCone received an email from Betty Smith

that stated:

"Your self-certification document is not a document that Exela will accept in lieu of a note/statement from a medical provider stating that you can return to work and have no restrictions.

We require that you provide us with a statement/note from a medical provider stating that you can return to work or a negative COVID test results.

You can return to work when you provide us with one of the documents noted above.'

42.    The EEOC publication in Dec 2020 "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" state:

## A. DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS

The ADA prohibits an employer from making **disability-related inquiries** and requiring **medical examinations** of employees, except under limited circumstances, as set forth below.[11]

1. *1. Definitions: Disability-Related Inquiries and Medical Examinations*

An inquiry is **"disability-related"** if it is likely to elicit information about a disability.[12] For example, asking an individual if his immune system is compromised is a disability-related inquiry because a weak or compromised immune system can be closely associated with conditions such as cancer or HIV/AIDS.[13] By contrast, an inquiry is not disability-related if it is not likely to elicit information about a disability. For example, asking an individual about symptoms of a cold or the seasonal flu is not likely to elicit information about a disability.

A **"medical examination"** is a procedure or test that seeks information about an individual's physical or mental impairments or health.[14] Whether a procedure is a medical examination under the ADA is determined by considering factors such as whether the test involves the use of medical equipment; whether it is invasive; whether it is designed to reveal the existence of a physical or mental impairment; and whether it is given or interpreted by a medical professional.

43.    Taking a covid-19 test require a specimen(s) to be remove from the body therefore, meet the definition of a "medical examination"

44.     Requiring a "note/statement from a medical provider stating that you can return to work and have no restrictions." meets the definition of "medical examination".

45.     The EEOC publication in Dec 2020 "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" state:

## 2. ADA Standards for Disability-Related Inquiries and Medical Examinations

The ADA regulates disability-related inquiries and medical examinations in the following ways:

- **During employment:** The ADA prohibits employee disability-related inquiries or medical examinations unless they are job-related and consistent with business necessity. Generally, a disability-related inquiry or medical examination of an employee is job-related and consistent with business necessity when an employer has a reasonable belief, based on objective evidence, that:
    1.    An employee's ability to perform essential job functions will be impaired by a medical condition; or
    2.    An employee will pose a direct threat due to a medical condition.[17]

This reasonable belief "must be based on objective evidence obtained, or reasonably available to the employer, prior to making a disability-related inquiry or requiring a medical examination."[18]

46.     McCone requested to return to work on Dec 14, 2020

47.    Defendants had no objective evidence that McCone's ability to perform essential job functions will be impaired by a medical condition" on or after Dec 14, 2020.

48.    Defendants had no objective evidence that McCone's pose a direct threat due to a medical condition on or after Dec 14, 2020.

49.    In December 2020 EEOC's publication "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" stated

> "During a pandemic, employers should rely on the latest CDC and state or local public health assessments...To repeat:  the ADA does not interfere with employers following recommendations of the CDC or public health authorities, and employers should feel free to do so."

50.    McCone submitted a signed and written complaint to the EEOC against Defendant(s) in Dec 2020.

51.    On Feb 12, 2021, Exela's lawyer named Luis Santos used an email that McCone sent to Betty Smith concerning his exposure to covid-19 and his desire to return to work as a basis for one of their motions for relief. (*see* Case No. 6:20-cv-01946-CEMEJK at Doc 38)[1]

---

[1] "The causal link element is construed broadly so that "`a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted*, 141 F.3d at 1460 (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993))." **Pennington v. City of Huntsville**, 261 F.3d 1262, 1266 (11th Cir. 2001).

52.    McCone received a termination of employment letter from Betty Smith dated February 16, 2021 that stated "your employment with the Company has been terminated, effective February 16, 2021."

53.    The EEOC issued McCone a right to sue letter. **(Exhibit "B")**

54.    The Plaintiff has satisfied all statutory prerequisites for filing this action.

## COUNT I

## TITLE VII – RETALIATION

55.    McCone re-alleges and incorporates by reference the allegations set forth in paragraphs 1-54, above.

56.    Defendants has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by suspending and terminating the employment of McCone because he opposed discriminatory practices in conflict with CDC guidance, the ADA and participated in legal proceedings alleging discrimination by defendant(s).

57.    The effect of the events described above has been to deprive McCone of equal employment opportunities in retaliation for exercising his federally protected rights.

58.    The unlawful employment practices described above were intentional.

59.    The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.    Order Defendants to make whole McCone by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to job search expenses and medical expenses;

2.    Order Defendants to make whole McCone by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

3.    That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

4.    Order Defendants to provide training to its officers, managers and employees regarding discrimination and retaliation in the workplace;

5.    Reinstate McCone to his former position;

6.    Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

7.    For such other and further relief as the Court may deem just, proper, and appropriate.; and

## JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its Complaint.

## COUNT II

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

60.    McCone re-alleges and incorporates by reference the allegations set forth in paragraphs 1-54, above.

61.    Defendants discriminated against McCone base on a perceived disability within the meaning of the ADA by suspending and terminating the employment of McCone because he opposed discriminatory practices in conflict with CDC guidance, the ADA and participated in legal proceedings alleging discrimination by defendant(s).

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.      Defendants compensate Plaintiff McCone with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination.

2.      Defendants compensate Plaintiff McCone with an award of front pay, if appropriate;

3.      Defendants pay to McCone punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

4.      Defendant pay to Plaintiff McCone, pre and post judgment interest, costs of suit and attorney fees as allowed by law;

5.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

6.      Reinstate McCone to his former position;

7.    For such other and further relief as the Court may deem just, proper, and appropriate.; and

## JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its Complaint.

Dated: May 26, 2021

Henry McCone
P.O. Box 551908
Orlando, FL 32855
321-287-7824