FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2021 OCT 19 PM 1:00

MIDDLE DISTRICT COURT
DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| HENRY L. McCONE, | Case No.:6:21-cv-00912-CEM-DCI |
| Plaintiff, | |
| vs. | AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES |
| EXELA TECHNOLOGIES, INC. and | |
| EXELA ENTERPRISE SOLUTIONS, INC. | |
| Defendants | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      This is an action for retaliation and discrimination pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"),

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court by Sections 703(a), 704(a), 706(f)(1), 706(f)(3), 42 U.S.C. §12112, § 12203, 12117, 12133, 12188, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., for retaliation. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §2000e-5(f);  42 U.S.C. § 2000e-3(a). Equitable and other relief is

sought under 42 U.S.C. § 2000e-5(g) and the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Furthermore, the jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §§1331 and 1391 as Plaintiffs claims are substantively based on Title VII and the ADA.

3.      Defendants are an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b) and employs 50 or more employees.

## Venue

4.      Defendants operate their business within the Middle District of The State of Florida. All actions by Defendants alleged herein occurred within the Middle District of The State of Florida. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## PARTIES

5.      Plaintiff, HENRY MCCONE (McCone) is a natural person and United States citizen and a resident of Orange County, Florida during all relevant times of this action.

6.      Defendant, EXELA TECHNOLOGIES, INC. (exela tech) is a for-profit corporation with its principal place of business at 2701 East Grauwyler Rd., Irving, Tx, 75061.

7.      Defendant, EXELA ENTERPRISE SOLUTIONS, INC f/k/a NOVITEX ENTERPRISE SOLUTIONS, INC. f/k/a PITNEY BOWES MANAGEMENT SERVICES, INC (exela) is a for-profit corporation with its principal place of business at 300 First Stamford Place 2nd Fl Stamford, CT 06902.

## FACTUAL BACKGROUND

8.      Exela Tech performs operational decision making for Defendant Exela.

9.      Exela Tech performs, provides and participates in human resource, employee training, and management decision making for employees of Defendant Exela.

10.      Exela Tech has financial control and interests over Defendant Exela.

11.      Defendants have interrelated operations, centralized control of labor, common management, and maintain common ownership and/or financial control with one another.

12.      McCone was employed by defendants during all relevant times until defendants' terminated McCone's employment on Feb 16, 2021. (Exhibit "A")

13.     In 2011, McCone filed a complaint with the Equal Employment Opportunity Commission (eeoc) alleging sex based discrimination in employment against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc.

14.     In 2011, McCone filed a complaint with the Florida Commission on Human Relations (FCHR) alleging sex based discrimination against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc.

15.     McCone opposed defendant(s) alleged sex based discrimination while on the job.

16.     After McCone had opposed defendant(s) alleged sex based discrimination, McCone received a performance review in August 2010 from management which include the following statement:

> "The changes in our business culture requires all employees to support and take on extra responsibilities (i.e., driving courier route). Henry has expressed is unwillingness to adapt to this change and help meet our SLAs."

17.     McCone continued to oppose defendant(s) alleged sex based discrimination at his employment work site for Defendants up to the date of his termination on February 16, 2021.

Page 4 of 46

18.    The 2011 complaint with the EEOC alleged sex based discrimination against Exela Enterprise Solutions, Inc F/K/A Novitex Enterprise Solutions, Inc. F/K/A Pitney Bowes Management Services, Inc and was a dual filing with FCHR.

19.    On or about September 11, 2012, the EEOC sent a Dismissal and Notice of Rights to the McCone.

20.    In 2012, McCone filed a complaint alleging sex based discrimination in Federal Court of the Middle District of Florida (Case No. 6:12-cv-01852-ACC-DAB)

21.    In 2014, McCone filed a complaint alleging sex based discrimination in The Circuit Court Of The Ninth Judicial Circuit in and For Orange County, Florida against Exela (CASE NO.: 2014-CA-13224).

22.    McCone alleged in (1) the 2011 complaint with the EEOC, (2) the federal complaint (Case No. 6:12-cv-01852-ACC-DAB) and (3) the Florida State complaint (CASE NO.: 2014-CA-13224) that defendants demanded that McCone and all male employees working at his job site (located at 135 West Central Blvd, Orlando FL) to participate in the driving duties that he was not hire to do but all female employees were excluded

from the driving duties included females hired with driving as one of their duties for over 10 years under multiple managers.

23.    On October 21, 2020, McCone filed for declaratory judgment against Exela in the United States District Court, Middle District Of Florida, Orlando Division (Case No.: 6:20-cv-01946-CEM-EJK) concerning events and seeking to revolved disputes in the sex based discrimination case (CASE NO.: 2014-CA-13224).

24.    Defendants' counsel Luis Santos also represented defendant(s) in the federal case alleging sex based discrimination (Case No. 6:12-cv-01852-ACC-DAB); the state case alleging sex based discrimination (CASE NO.: 2014-CA-13224) and the federal case for perspective relief (Case No.: 6:20-cv-01946-CEM-EJK).

25.    In the federal case Case No.: 6:20-cv-01946-CEM-EJK, defendants' counsel Luis Santos filed a motion on Feb 12, 2021 titled **"DEFENDANTS PITNEY BOWES, INC. AND EXELA ENTERPRISE SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR A POST-DEADLINE FILING EXTENSION PURSUANT TO RULE 6(b)(1)(B)"** and stated in the motion that:

"Clearly, COVID-19 did not stop Plaintiff from checking his
mail given that he admits his symptoms had subsided by
December 1 (before Motion to Dismiss was filed or mailed) and
by December 7 he had "returned to [his] full workout routine
which include[d][his] morning runs with no problems." *Id.*"
**(Exhibit "B")**

26.     In order for McCone to check his U.S.  Post Office box, McCone

has to be around other inside the Post Office including U.S. Postal

employees.

27.     Defendants alleged their motion to dismiss was mailed on Dec

2, 2020 and federal rules allow three days for mailing therefore, under ideal

condition, McCone should have received the motion at his Post Office box

on or about Dec 6, 2020. **(Exhibit "B")**

28.     McCone's covid symptoms started on Nov 28, 2020 and a 14

day quarantine would be over on or about Sat, Dec 12, 2020.

29.     Defendants are advocating that McCone break covid-19

quarantine early to check his Post Office box for their motion to dismiss.[1]

30.     Given that Defendants are advocating that McCone break

covid-19 quarantine early and be around others to check his Post Office box

for their motion to dismiss without the need for a doctor's note or negative

---

[1] McCone would also have to come to the courthouse in person and be around others to
file his opposition.

covid-19 test, it would follow that McCone should have been able to return to work on Dec 14, 2020 after quarantine and be around others without the need for a doctor's note or negative covid-19 test

31.    Attached to Defendants' motion titled **"DEFENDANTS PITNEY BOWES, INC. AND EXELA ENTERPRISE SOLUTIONS, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR A POST-DEADLINE FILING EXTENSION PURSUANT TO RULE 6(b)(1)(B)"** was an email from McCone to Betty Smith. **(Exhibit "B")**[2]

32.    On November 28, 2020, McCone suddenly started to exhibit symptoms of Covid-19 of chills, body aches and headaches without fever temp of 100.4° F of more and without breathing problems.

33.    Body aches/Joint or muscle pain and headaches associated with covid-19 could be regarded as substantially limiting if an individual is unable to perform a major life function.

34.    U.S. Department of Health & Human Services has determined that symptoms like Body aches/Joint or muscle pain and headache

---

[2] Note that Betty Smith is also the name on McCone's letter of termination. **(Exhibit "A")** Also note that Defendants motion with Betty Smith's email attached was filed on Feb 12, 2021 and McCone was terminated days later on Feb 16, 2021.

associated with covid-19 could be a disability under the ADA, Section 504, and Section 1557. (**Exhibit "C"**)

35.    The EEOC state:

"The EEOC recognizes that "long COVID" may be a disability under the Americans with Disabilities Act (ADA) and Section 501 of the Rehabilitation Act in certain circumstances. The EEOC agrees with the analysis of "long COVID" by the Departments of Health and Human Services and Justice in their "Guidance on 'Long COVID' as a Disability Under the ADA, Section 504, and Section 1557." EEOC technical assistance about COVID-19 and ADA "disability" in the employment context will be released in the coming weeks."

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

36.    The ADA, in § 12112(d)(4)(A), provides that

[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.[3]

37.    On November 29, 2020, McCone telephonically called Debbie Cole who was a manager with Exela that McCone reported to.

---

[3] "Today we conclude, as have other circuits, that § 12112(d)(4)(A) protects employees who are not disabled." **Owusu-Ansah, v. Coca-Cola Co.**, 715 F.3d 1306, 1311 (11th Cir.2013) (citations omitted)

38.     McCone informed Debbie Cole on November 29, 2020 that he had been exposed to covid-19.

39.     On November 29, 2020, Debbie Cole instructed McCone to take off from work for the next two weeks purportedly in compliance with CDC guidance.[4]

40.     On November 29, 2020, Debbie Cole instructed McCone to contact "Lincoln" and apply for leave under the Family and Medical Leave Act (FMLA).

41.     On November 30, 2020, Debbie Cole sent McCone a text and stated "I need you to call Willie tomorrow and get the number for Lincoln to start a claim. It's no big deal but has to be done." **(Exhibit "D")**

42.     McCone contacted Lincoln Financial Group and applied for FMLA pursuant to Debbie Cole's instructions.

43.     On December 1, 2020, Lincoln Financial Group sent McCone a letter requesting information including but not limited to "Provider Certification – Your doctor will need to complete this documentation that 'certifies' your leave before I can approve your leave claim".

---

[4] McCone did not resist Debbie Cole on this because the CDC had previously stated to "Stay home for 14 days after your last contact with a person who has COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/your-health/quarantine-isolation.html

44.    On December 2, 2020, McCone had no covid-19 related symptoms without taking any medication.

45.    Dec 2, 2020, McCone informed Manager Debbie Cole that his "headaches are gone and Im feeling good" (**Exhibit "D"**)

46.    FMLA guidelines states "Eligible employees are entitled to:

- Twelve workweeks of leave in a 12-month period for:
    - the birth of a child and to care for the newborn child within one year of birth;
    - the placement with the employee of a child for adoption or foster care and to care for the newly placed child within one year of placement;
    - to care for the employee's spouse, child, or parent who has a serious health condition;
    - a serious health condition that makes the employee unable to perform the essential functions of his or her job;
    - any qualifying exigency arising out of the fact that the employee's spouse, son, daughter, or parent is a covered military member on "covered active duty;" **or**

- Twenty-six workweeks of leave during a single 12-month period to care for a covered servicemember with a serious injury or illness if the eligible employee is the servicemember's spouse, son, daughter, parent, or next of kin (military caregiver leave)."

47.     The U.S. Dept of Labor employee guide state a "serious health condition" as:

> "A serious health condition is an illness, injury, impairment, or physical or mental condition that involves **inpatient care** or **continuing treatment** by a health care provider. The FMLA does not apply to routine medical examinations, such as a physical, or to common medical conditions, such as an upset stomach, unless complications develop. For all conditions "incapacity" means inability to work, including being unable to perform any one of the essential functions of the employee's position, or inability to attend school, or perform other regular daily activities due to the serious health condition, treatment of the serious health condition, or recovery from the serious health condition." (emphasis in the original)

48.     The symptoms that McCone described to Debbie Cole did not reach the level of a serious health condition as defined The U.S. Dept of Labor employee guide.

49.     On page 15 of the U.S. Labor Dept's "The Employer's Guide to the Family and Medical Leave Act" state:

> "An employer's management team and leave administrators play a vital role in ensuring FMLA compliance. Managers,

assistant managers, supervisors and leave administrators must be able to recognize FMLA-qualifying reasons for leave and properly initiate the required notifications and eligibility checks."

50.    It is employer's management responsibility "to recognize FMLA-qualifying reasons for leave"

51.    Manager Debbie Cole instructed McCone to apply for FMLA while knowing or should have known that McCone symptoms didn't meet the FMLA guidelines as a serious health condition to qualify for FMLA.

52.    Due to McCone being symptom free of covid-19 and feeling good on Dec 2, 2020, McCone couldn't provide Lincoln Financial Group with certification of a serious health condition.

53.    McCone was fit, well, able and willing to return to work on Dec 14, 2020.

54.    Lincoln Financial Group sent McCone a letter dated Dec 16, 2020 that stated "We are writing to inform you that your leave under the Family & Medical Leave Act (FMLA) request for a leave of absence due to your own medical condition has been denied" (**Exhibit "E"**)

55.    McCone received an email from Debbie Cole on Dec 9, 2020 that stated "Henry, you can also get retested and bring the result in

Monday, if it's negative and work. If it's positive you need to send it to me and stay off until you have a Dr. note or a negative result for your return."

56.   Defendants request for a doctor's note was vague because defendants failed to define exactly what medical information and determinations was needed for the doctor's note therefore, the request was impossible to comply with.[5]

57.   McCone sent an email to Betty Smith and Debbie Cole on Dec 14, 2020 and stated:

> "specifically and with particularity, what is a doctor's note and return to work document? Are you demanding that I get documentation from a doc that I was sick or documentation that I'm not sick? Please clarify specifically and with particularity what is a doctor's note or return to work document and what do you expect to be in the doctor's note or return to work document?"[6]

58.   McCone sent an email to Betty Smith and Debbie Cole on Dec 14, 2020 and stated:

> "Im requesting confirmation from you that all exela employees have been required to provide a doc's note and/or a return to work document on the day the employee returns when they

---

[5] McCone had no ideal what tests defendant wanted. Did Defendant want McCone to pass a vision, hearing or agility test to return to work? McCone don't know because Defendants never explained what medical information they were seeking in the requested Doctor's note.

[6] McCone never received a response

have calls in sick for three or more consecutive workdays or have a pattern of absence. I need to know that this alleged requirement has been apply across the board."[7]

59.    McCone sent an email to Betty Smith and Debbie Cole on Dec 14, 2020 and stated:

"I never had any emergency warning signs for covid-19. I wasn't hospitalized or placed on a respirator or had any problems breathing. There is no reasonable evidence that I am or was mentally or physically incapable of performing my work duties while I've been quarantine for covid-19."

60.    On Dec 9, 2020, McCone sent Debbie Cole and Betty Smith an email that stated:

'It appears that management isn't up to date with the covid guidelines. First the CDC state: (1) "Available data indicate that persons with mild to moderate COVID-19 remain infectious no longer than 10 days after symptom onset." (2)"On August 3, 2020, CDC updated its isolation guidance based on the latest science about COVID-19 showing that people can continue to test positive for up to 3 months after diagnosis and not be infectious to others." And (3) "Since August 2020, CDC has recommended *against* the need for retesting persons with asymptomatic infection within 90 days of first SARS-CoV-2 infection or illness because evidence *to date* suggests that reinfection does not occur within this time window (CDC Guidance on Duration of Isolation and Precautions for Adults with COVID-19)." (emphasis in the original)"

---

[7] McCone never got a response.

61.    On Dec 9, 2020, McCone sent Debbie Cole and Betty Smith an email that stated "Im concerned that management is impeding my ability to return to work with statements that appear to have no factual basis."

62.    On Dec 10, 2020, McCone sent an email to Debbie Cole and Betty Smith that stated;

> ""I want to add that the CDC also state "Employers should not require sick employees to provide a COVID-19 test result or a healthcare provider's note to validate their illness, qualify for sick leave, or to return to work.".

> I have attached a copy of the document which is titled "General Business Frequently Asked Questions" and updated Dec 2, 2020. See page 10 of 21 under subsection "Healthy Business Operations"."

63.    On Dec 11, 2020, McCone received an email from Betty Smith that states

> "Attached is a copy of our Attendance policy which states: "If an employee calls in sick for three or more consecutive workdays or have a pattern of absence the employee may be required to provide their supervisor with a doctor's note on the day the employee returns to work"

64.    McCone did not call in sick on or after Nov 29, 2020.

65.    McCone did not have a pattern of absence.

66.    On Dec 14, 2020, McCone received an email from Betty Smith that stated:

"Your self-certification document is not a document that Exela will accept in lieu of a note/statement from a medical provider stating that you can return to work and have no restrictions.

We require that you provide us with a statement/note from a medical provider stating that you can return to work or a negative COVID test results.

You can return to work when you provide us with one of the documents noted above.'

67.    The EEOC state:

"The EEO laws, including the ADA and Rehabilitation Act, continue to apply during the time of the COVID-19 pandemic, but they do not interfere with or prevent employers from following the guidelines and suggestions made by the CDC or state/local public health authorities about steps employers should take regarding COVID-19. **Employers should remember that guidance from public health authorities is likely to change as the COVID-19 pandemic evolves. Therefore, employers should continue to follow the most current information on maintaining workplace safety.**"

https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

68.    The EEOC publication in Dec 2020 "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" state:

## A. DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS

The ADA prohibits an employer from making **disability-related inquiries** and requiring **medical examinations** of employees, except under limited circumstances, as set forth below.[11]

1. 1. *Definitions: Disability-Related Inquiries and Medical Examinations*

An inquiry is **"disability-related"** if it is likely to elicit information about a disability.[12] For example, asking an individual if his immune system is compromised is a disability-related inquiry because a weak or compromised immune system can be closely associated with conditions such as cancer or HIV/AIDS.[13] By contrast, an inquiry is not disability-related if it is not likely to elicit information about a disability. For example, asking an individual about symptoms of a cold or the seasonal flu is not likely to elicit information about a disability.

A **"medical examination"** is a procedure or test that seeks information about an individual's physical or mental impairments or health.[14] Whether a procedure is a medical examination under the ADA is determined by considering factors such as whether the test involves the use of medical equipment; whether it is invasive; whether it is designed to reveal the existence of a physical or mental impairment; and whether it is given or interpreted by a medical professional.

69.   Taking a specimen(s) from the body to conduct a covid-19 test meets the definition of "medical examination" because it seeks to reveal the existence of a physical or mental impairment by a medical professional.

70.    Requiring a "note/statement from a medical provider stating that you can return to work and have no restrictions." meets the definition of "medical examination" because it seeks to reveal the existence of a physical or mental impairment by a medical professional.

71.    Defendants never informed McCone of how their request for a doctor's note was job-related and a business necessity before McCone's employment was terminated on Feb 16, 2021.

72.    Defendants never informed McCone of how their request for a negative covid-19 test was job-related and a business necessity before McCone's employment was terminated on Feb 16, 2021.

73.    The EEOC publication in Dec 2020 "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" state:

## 2. *ADA Standards for Disability-Related Inquiries and Medical Examinations*

The ADA regulates disability-related inquiries and medical examinations in the following ways:

- **During employment:** The ADA prohibits employee disability-related inquiries or medical examinations unless they are job-related and consistent with business necessity. Generally, a disability-related inquiry or medical examination of an employee is job-related and consistent with business necessity when an employer has a reasonable belief, based on objective evidence, that:

1.    An employee's ability to perform essential job functions will be impaired by a medical condition; or

2.    An employee will pose a direct threat due to a medical condition.[17]

This reasonable belief "must be based on objective evidence obtained, or reasonably available to the employer, prior to making a disability-related inquiry or requiring a medical examination."[18]

74.    McCone requested to return to work on Dec 14, 2020

75.    Defendants had no objective evidence that McCone's ability to perform his essential job functions will be impaired by a medical condition on or after Dec 14, 2020.

76.    Defendants had no objective evidence that McCone's pose a direct threat due to a medical condition on or after Dec 14, 2020.

77.    In December 2020 EEOC's publication "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act" stated

"During a pandemic, employers should rely on the latest CDC and state or local public health assessments...To repeat:  the ADA does not interfere with employers following recommendations of the CDC or public health authorities, and employers should feel free to do so."

78.    McCone submitted a signed and written complaint to the EEOC against Defendant(s) in Dec 2020.

79.     On Dec 31, 2020, McCone received an email from Betty Smith that stated "You are still showing as being on a leave of absence (FMLA) which is unpaid." and McCone replied on Jan 4, 2021 that "I need to clarify something. Im not out of work because of "a leave of absence (FMLA)"." (**Exhibit "F"**)

80.     McCone was emailed a letter on Jan 21, 2021 from Betty Smith dated Jan 20, 2021 that stated "**Re: Leave of Absence and Employment Status" (Exhibit "G")**[8] and McCone replied on Jan 4, 2021 that:

> "*Hi Betty Smith, first, where did you get this ideal that Im on some kind of leave.* Who told you this because it didnt come from me. The sole reason Im not working is because you ( Betty Smith) and Debbie Cole told me not to return to work without a doctor note or negative test which brings me to point two. Second, *what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense?"* (**Exhibit "H"**) (emphasis added)

81.     Defendants' request that McCone provide a "note/statement from a medical provider stating that [he] can return to work and have no restrictions seeks information about an individual's physical or mental impairments or health interpreted by a medical professional meet the definition of a medical examination.

---

[8] Note that McCone had already reiterated that McCone wasn't on leave in an email on Jan 4, 2021 and defendants keep insisting that McCone's was on leave. See preceding paragraph.

82.    A covid-19 test require a sample to be taken from the body and test to seeks information about an individual's physical or mental impairments or health and interpreted by a medical professional meet the definition of a medical examination.

83.    McCone received a termination of employment letter from Betty Smith dated February 16, 2021 that stated "your employment with the Company has been terminated, effective February 16, 2021." (**Exhibit "A"**)

84.    The EEOC issued McCone a right to sue letter. (**Exhibit "I"**)

85.    The Plaintiff has satisfied all statutory prerequisites for filing this action.

## COUNT I

## TITLE VII – RETALIATION

86.    McCone re-alleges and incorporates by reference the allegations set forth in paragraphs 1-85.

87.    Defendants, Exela Tech and Exela has engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by suspending and terminating the employment of McCone

because he opposed sex based discriminatory practices and participated in legal proceedings alleging sex based discrimination by defendant(s).

88.    McCone believe that his opposition to defendant(s) only requiring all males employee to do the driving duties at his work site and excluding all female employees from the driving duties was sex based discrimination in violation of Title VII therefore, a reasonable and good faith belief.

89.    McCone opposed Defendants alleged sex based discrimination by filing a complaint with the U.S. Equal Employment Opportunity Commission in 2011.

90.    Defendants knew that McCone filed a complaint with the EEOC alleging violations of the Title VII in 2011.

91.    Betty Smith knew or should have known that McCone filed a complaint with the EEOC alleging violations of the Title VII in 2011.

92.    After McCone filed his complaint alleging sex based discrimination with the EEOC, McCone participated in litigation with Defendants by suing Defendants in state and federal court alleging sex based discrimination.

93.   When McCone was terminated on Feb 16, 2021, McCone was in pending litigation with Defendants for alleged sex based discrimination.

94.   Betty Smith sharing emails from McCone with Defendants' outside counsel, Luis Santos who work for the firm Ford and Harrison LLP, that specialize in labor and employment law implicate at a minimum a causal connection between Betty Smith, a decision maker who was involved in McCone's termination and the litigation involving sex based discrimination which is protected activity.

95.   Defendants' counsel, Luis Santos being in possession of email(s) that McCone sent to Betty Smith to defend Defendants in litigation involving sex based discrimination which is protected activity indicate that Betty Smith a decision maker who was involved in McCone's termination knew or should have known before terminating McCone that McCone was opposing sex based discrimination.

96.   Defendants' counsel, Luis Santos being in possession of email(s) that McCone sent to Betty Smith to defend Defendants in litigation involving sex based discrimination which is protected activity indicate that Betty Smith a decision maker who was involved in McCone's termination knew or should have known before terminating McCone of his past and

present participation in the protective activity of suing Defendants in court
for sex based discrimination.

97.   Defendants alleged legitimate, non-discriminatory reasons for
McCone's suspension and termination was improper because company
policy didn't apply to McCone due to (1) the fact that McCone didn't call
out and was out on management's request, (2) McCone reported no serious
physical or mental illness that would have prevented McCone from doing
his job, and (3) McCone was symptom free and feeling good by the third
work day

98.   Defendants alleged legitimate, non-discriminatory reasons for
McCone's suspension and termination was false because (1) McCone
applied for leave only because defendants order him to apply while
defendants knew or should have known that McCone wasn't qualified for
leave, (2) McCone was denied leave therefore, he wasn't on leave, (3) after
McCone was denied leave, defendants falsely claim that McCone was on
leave, (4) after McCone reiterated that he was not on leave, defendants
continued to falsely claim that McCone was on leave.

99.   Defendants contradicted their stance that McCone shouldn't be
allowed to return to work and be around others by stating in their court

filings (before terminating McCone) "Clearly, COVID-19 did not stop

Plaintiff from checking his mail..." which required McCone to break

quarantine early and be around others before Dec 14, 2020.

100.   Defendants improperly used their inapplicable company policy

to demand medical information from McCone (e.g. Doctor's note and

negative covid test)

101.   Defendants falsely claimed McCone was on leave to demand

medical information from McCone (e.g. Doctor's note and negative covid

test)

102.   Defendants (1) created the false narrative that McCone was on

leave and (2) use that false narrative to demand that McCone provide

medical information to justify the non-existing leave while (3) knowing

McCone can't provide medical information to justify the non-existing leave

and (4) use McCone's inability to provide medical information to justify the

non-existing leave as grounds to suspend and terminate McCone's

employment.

103.   All of Defendants alleged legitimate, non-discriminatory

reasons for McCone's suspension and termination were false.

104.   All of Defendants alleged legitimate, non-discriminatory reasons for McCone's suspension and termination were pretex

105.   But for (1) McCone's opposition to defendants alleged sex base discrimination, (2) filing eeoc complaints alleging violations of Title VII, and (3) participating in past and present litigation with defendants alleging sex based discrimination, defendant would not have suspended and terminated McCone's employment.

106.   The effect of the events described above has been to deprive McCone of equal employment opportunities in retaliation for exercising his federally protected rights.

107.   The unlawful employment practices described above were intentional.

108.   The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

### Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.   Order Defendants to make whole McCone by providing compensation for past and future pecuniary losses resulting from the

unlawful employment practices described above, including but not limited to job search expenses and medical expenses;

2.      Order Defendants to make whole McCone by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation;

3.      That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

4.      Order Defendants to provide training to its officers, managers and employees regarding discrimination and retaliation in the workplace;

5.      Reinstate McCone to his former position;

6.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

7.      Find that defendant retaliated against McCone in violation of Title VII.

8.      For such other and further relief as the Court may deem just, proper, and appropriate.; and

## JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its

Complaint.

## COUNT II

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

109.   McCone re-alleges and incorporates by reference the allegations

set forth in paragraphs 1-85.

110.   Defendants, Exela Tech and Exela has engaged in unlawful

practices in violation of § 12112(d)(4)(A) due to defendants requesting that

McCone provide a doctor's note consequently, requesting that McCone

undergo a medical examination that wasn't job-related and wasn't

consistent with business necessity

111.   Defendants use of the company policy that an employee may

be required to provide a doctor's note if they call out three or more day to

suspend McCone's employment was inapplicable because the policy didn't

apply to McCone because McCone was out from work on management's

instruction.

112.   Defendants made misrepresentations that McCone was on

leave when McCone was not on leave.

113.   Defendants contradicted their stance that McCone shouldn't be allowed to return to work and be around others by stating in their court filings (before terminating McCone) "Clearly, COVID-19 did not stop Plaintiff from checking his mail..." which required McCone to break quarantine early and be around others before Dec 14, 2020.

114.   McCone asked Betty Smith in an email on Jan 30, 2021 "what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense?" and McCone never received an answer on or before his termination on Feb 16, 2021.

115.   Defendants request for a doctor's note was in conflict with CDC guidance.

116.   Defendants had no reasonable belief based objective evidence obtained or reasonably available to Defendants prior to requesting McCone to provide a doctor's note that McCone's ability to perform his essential job functions will be impaired by a medical condition; or he will pose a direct threat due to a medical condition on or after Dec 14, 2020.

117.   The unlawful employment practices described above were intentional.

118.    The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

### Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.      Defendants compensate Plaintiff McCone with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination if appropriate and allowable.

2.      Defendants compensate Plaintiff McCone with an award of front pay, if appropriate;

3.      Defendants pay to McCone punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

4.      Defendant pay to Plaintiff McCone, pre and post judgment interest, costs of suit and attorney fees as allowed by law if appropriate;

5.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and

procedures for preventing the recurrence of any such discriminatory and

unlawful acts;

6.     Reinstate McCone to his former position;

7.     Adjudicate Defendants in violation of § 12112(d)(4)(A);

8.     For such other and further relief as the Court may deem just,

proper, and appropriate.; and

JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its

Complaint.

COUNT III

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

119.   McCone re-alleges and incorporates by reference the allegations

set forth in paragraphs 1-85.

120.   Defendants, Exela Tech and Exela has engaged in unlawful

practices in violation of § 12112(d)(4)(A) due to defendants requesting that

McCone provide a negative covid-19 test consequently, requesting that

McCone undergo a medical examination that wasn't job-related and wasn't

consistent with business necessity

121.   Defendants made misrepresentations that McCone was on leave when McCone was not on leave.

122.   Defendants contradicted their stance that McCone shouldn't be allowed to return to work and be around others by stating in their court filings (before terminating McCone) "Clearly, COVID-19 did not stop Plaintiff from checking his mail…" which required McCone to break quarantine early and be around others before Dec 14, 2020.

123.   McCone asked Betty Smith in an email on Jan 30, 2021 "what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense?" and McCone never received an answer on or before his termination on Feb 16, 2021.

124.   Defendants request for a negative covid-19 test was in conflict with CDC guidance.

125.   Defendants had no reasonable belief based objective evidence obtained or reasonably available to Defendants prior to requesting McCone to provide a negative covid-19 test that McCone's ability to perform his essential job functions will be impaired by a medical condition; or he will pose a direct threat due to a medical condition on or after Dec 14, 2020.

126.   The unlawful employment practices described above were intentional.

127.   The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

## Prayer for Relief

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.      Defendants compensate Plaintiff McCone with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination if appropriate and allowable.

2.      Defendants compensate Plaintiff McCone with an award of front pay, if appropriate;

3.      Defendants pay to McCone punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

4.      Defendant pay to Plaintiff McCone, pre and post judgment interest, costs of suit and attorney fees as allowed by law if appropriate;

5.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

6.      Reinstate McCone to his former position;

7.      Adjudicate Defendants in violation of § 12112(d)(4)(A);

8.      For such other and further relief as the Court may deem just, proper, and appropriate.; and

## JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its Complaint.

## COUNT IV

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

128.   McCone re-alleges and incorporates by reference the allegations set forth in paragraphs 1-85.

129.   Defendants retaliated against McCone base on a perceived disability within the meaning of the ADA by suspending McCone employment from Dec 2020 to his termination Feb 16, 2021.

130.   McCone's symptoms of body aches/Joint or muscle pain and headache associated with covid-19 could be considered a disability under the ADA, Section 504, and Section 1557 and Defendants regarded McCone as disabled.

131.   Defendants regarded McCone as disabled and interfered with McCone's employment by suspended McCone's employment for months after McCone complied with management's request to take off from work for two weeks.

132.   McCone opposed Defendant discriminatory practices by filing an EEOC complaint alleging violations of the ADA

133.   McCone opposed Defendant discriminatory practices by opposing Defendants request for a doctor's note and negative covid-19 test because of a good faith belief that the request was an unlawful request for a medical examination in violation of the ADA.

134.   Defendants, including Debbie Cole and Betty Smith were aware of McCone's opposition to the request for a doctor's note and negative covid-19 test.

135.   Defendants, including Debbie Cole and Betty Smith knew or should have known that McCone filed a complaint with the EEOC alleging violations of the ADA.

136.   Defendants made misrepresentations that McCone was on leave when McCone was not on leave.

137.   After McCone reiterated to Defendants that he wasn't on leave, Defendants continue to assert that McCone was on leave.

138.   Defendants use of the false narrative that McCone was on leave to suspend McCone's employment was a pretext.

139.   Defendants (1) created the false narrative that McCone was on leave and (2) use that false narrative to demand that McCone provide medical information to justify the non-existing leave while (3) knowing McCone can't provide medical information to justify the non-existing leave and (4) use McCone's inability to provide medical information to justify the non-existing leave to suspend McCone's employment.

140.   Defendants use of the company policy that an employee may be required to provide a doctor's note if they call out three or more day to suspend McCone's employment was a pretext to discriminate against

McCone because the policy didn't apply to McCone because McCone didn't call out and was out from work on management's instruction.

141.   Defendants contradicted their stance that McCone shouldn't be allowed to return to work and be around others by stating in their court filings (before terminating McCone) "Clearly, COVID-19 did not stop Plaintiff from checking his mail…" which required McCone to break quarantine early and be around others before Dec 14, 2020.

142.   McCone asked Betty Smith in an email on Jan 30, 2021 "what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense?" and McCone never received an answer on or before his termination on Feb 16, 2021.

143.   Defendants failed to provide a non-discriminatory reason for suspending McCone's employment.

144.   All of Defendants alleged legitimate, non-discriminatory reasons for McCone's suspension were false.

145.   All of Defendants alleged legitimate, non-discriminatory reasons for McCone's suspension were pretex

146.   But for McCone's opposition to Defendants request for a doctor's note and negative covid-19 test, defendant would not have suspended McCone's employment.

147.   But for McCone's filing eeoc complaints alleging violations of the ADA, defendant would not have suspended McCone's employment.

148.   The unlawful employment practices described above were intentional.

149.   The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.   Defendants compensate Plaintiff McCone with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination if appropriate and allowable.

2.   Defendants compensate Plaintiff McCone with an award of front pay, if appropriate;

3.      Defendants pay to McCone punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

4.      Defendant pay to Plaintiff McCone, pre and post judgment interest, costs of suit and attorney fees as allowed by law if appropriate;

5.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

6.      Reinstate McCone to his former position;

7.      Adjudicate that McCone's suspension by Defendants was in violation of the ADA;

8.      For such other and further relief as the Court may deem just, proper, and appropriate.; and

## JURY TRIAL DEMAND

McCone requests a jury trial on all questions of fact raised by its Complaint.

## COUNT V

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

150.   McCone re-alleges and incorporates by reference the allegations set forth in paragraphs 1-85, above.

151.   Defendants retaliated against McCone base on a perceived disability within the meaning of the ADA by terminating McCone's employment on Feb 16, 2021.

152.   McCone's symptoms of body aches/Joint or muscle pain and headache associated with covid-19 could be considered a disability under the ADA, Section 504, and Section 1557 and Defendants regarded McCone as disabled.

153.   Defendants regarded McCone as disabled and interfered with McCone's employment by terminated McCone's employment.

154.   McCone opposed Defendant discriminatory practices by filing an EEOC complaint alleging violations of the ADA

155.   McCone opposed Defendant discriminatory practices by opposing Defendants request for a doctor's note and negative covid-19 test because of a good faith belief that the request was an unlawful request for a medical examination in violation of the ADA.

156.   Defendants, including Debbie Cole and Betty Smith were aware of McCone's opposition to the request for a doctor's note and negative covid-19 test before McCone's termination on Feb 16, 2021.

157.   Defendants, including Debbie Cole and Betty Smith knew or should have known that McCone filed a complaint with the EEOC alleging violations of the ADA.

158.   Defendants made misrepresentations that McCone was on leave when McCone was not on leave.

159.   After McCone reiterated to Defendants that he wasn't on leave, Defendants continue to assert that McCone was on leave.

160.   Defendants use of the false narrative that McCone was on leave was pretext.

161.   Defendants (1) created the false narrative that McCone was on leave and (2) use that false narrative to demand that McCone provide medical information to justify the non-existing leave while (3) knowing McCone can't provide medical information to justify the non-existing leave and (4) use McCone's inability to provide medical information to justify the non-existing leave to terminate McCone's employment.

162.   Defendants use of the company policy that an employee may be required to provide a doctor's note if they call out three or more day to suspend McCone's employment was a pretext to discriminate against McCone because the policy didn't apply to McCone because McCone didn't call out and was out from work on management's instruction.

163.   Defendants contradicted their stance that McCone shouldn't be allowed to return to work and be around others by stating in their court filings (before terminating McCone) "Clearly, COVID-19 did not stop Plaintiff from checking his mail…" which required McCone to break quarantine early and be around others before Dec 14, 2020.

164.   McCone asked Betty Smith in an email on Jan 30, 2021 "what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense?" and McCone never received an answer on or before his termination on Feb 16, 2021.

165.   Defendants failed to provide a non-discriminatory reason for terminating McCone's employment.

166.   All of Defendants alleged legitimate, non-discriminatory reasons for McCone's termination were false.

167.   All of Defendants alleged legitimate, non-discriminatory reasons for McCone's termination were pretex

168.   But for McCone's opposition to Defendants request for a doctor's note and negative covid-19 test, defendant would not have terminated McCone's employment.

169.   But for McCone filing an eeoc complaints alleging violations of the ADA, defendant would not have terminated McCone's employment.

170.   The unlawful employment practices described above were intentional.

171.   The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of McCone.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for a judgment in his favor as follows:

1.     Defendants compensate Plaintiff McCone with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination if appropriate and allowable.

2.      Defendants compensate Plaintiff McCone with an award of front pay, if appropriate;

3.      Defendants pay to McCone punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

4.      Defendant pay to Plaintiff McCone, pre and post judgment interest, costs of suit and attorney fees as allowed by law if appropriate;

5.      Issue an injunction ordering Defendants to stop engaging in such discriminatory and unlawful acts, and to develop policies and procedures for preventing the recurrence of any such discriminatory and unlawful acts;

6.      Reinstate McCone to his former position;

7.      Adjudicate that McCone's termination by Defendants was in violation of the ADA;

8.      For such other and further relief as the Court may deem just, proper, and appropriate.; and

<u>JURY TRIAL DEMAND</u>

McCone requests a jury trial on all questions of fact raised by its complaint.

Dated: October 19, 2021

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by U.S. Mail to Luis Santos, 101 East Kennedy Blvd, Suite 900, Tampa, Fl 33602 on this 19th of October, 2021.

Henry L. McCone
P.O. Box 551908
Orlando, FL 32855
321-287-7824

Page 46 of 46