FILED

2022 MAY 23 PM 3:36

[illegible] DISTRICT COURT
[illegible] DISTRICT OF FLORIDA
[illegible]LANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HENRY L. McCONE,

Plaintiff,

vs.

EXELA TECHNOLOGIES, INC. and
EXELA ENTERPRISE SOLUTIONS, INC.

Defendants

Case No.:6:21-cv-00912-CEM-DCI

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, Henry McCone" (McCone) hereby file this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and in support state the following:

Citations to the Affidavit will be indicated as (Afft, para.___), with the appropriate paragraph number inserted.

**STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed. R.Civ.P. There must be more than a simple disputed fact involved, "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-8 (1986). The moving party has the responsibility to inform the court why it is seeking the motion and to show the court the portions of "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has accomplished this, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F. 2d 1573, 1577 (11th Cir. 1990); see also Anderson, 477 U.S. at 252 (1986). The U.S. Supreme Court, in *Anderson v. Liberty Lobby, Inc.* - 477 U.S. 242, 106 S. Ct. 2505 (1986), stressed that the inquiry on a motion for summary judgment is not simply whether an issue of "fact" exists, but rather whether an issue of "material fact" exists. Thus, it is not enough for a litigant opposing summary judgment to demonstrate that factual disputes exist. Rather, the litigant must demonstrate not only that factual disputes exist but that those factual disputes are "material" to the outcome of the case. Commenting on this prong of the standard, the Court stated:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.[1]

Moreover, as set forth in Rule 56(c), any disputed issue of material fact must also be "genuine." Describing this concept, the Court in *Liberty Lobby* stated:

> [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Similarly, the Court, in *Matsushita Electric Industrial Co.*, held:

[1] *Id.* at 248.

[T]he issue of fact must be "genuine." When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.[2]

In addition, summary judgment can be had before discovery is initiated or completed.

> "We cannot, however, adopt the blanket prohibition on the granting of summary judgment motions before discovery that appellant now urges on us. Rule 56(f) specifically addresses the question of summary judgment before discovery has taken place.[2] The party opposing summary judgment may move the court to permit the discovery necessary to oppose the motion. The party seeking to use rule 56(f) "`may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but rather he must specifically demonstrate `how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527 (11th Cir.1983) (quoting SEC v. Spence & Green Chem. Co., 612 F.2d 896 (5th Cir.1980)). The presence of rule 56(f) shows that appellant's argument that it is per se improper to grant summary judgment without providing the opponent an opportunity to conduct discovery is without merit. Rule 56(a) provides in part that a claimant may move for summary judgment "at any time after the expiration of 20 days from the commencement of the action." Similarly, rule 56(b) states that a defendant may move for summary judgment "at any time." Neither rule requires that a party wait until discovery has taken place. Furthermore, rule 56(f) shows that a court may grant summary judgment without the parties having conducted discovery if the opponent has not sought discovery by making a motion under rule 56(f), or if the court has, in the valid exercise of its discretion, denied such a motion." **Reflectone, Inc. v. Farrand Optical Co**., 862 F.2d 841, 843-44 (11th Cir. 1989).

### *Employer*

It is undisputed that Exela Enterprise was McCone's employer (Doc 34, answers to paragraphs 12) but Defendants have alleged that Exela Technologies isn't McCone's employer however, Defendants are so intertwined that it is almost impossible to separate them.

> "In considering whether an entity is an individual's employer, we consider: (1) whether or not the employment took place on the premises of the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees. *Welch v. Laney,* 57 F.3d 1004, 1011

[2] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986),

(11th Cir.1995) (quoting *Wirtz v. Lone Star Steel Co.,* 405 F.2d 668, 669-70 (5th Cir.1968))." **Morrison v. Magic Carpet Aviation,** 383 F.3d 1253, 1257 (11th Cir. 2004)

The power, control and influence that Exela Technologies have over Exela Enterprise Solution and its employees is extensive and evident. **First**, Exela Enterprise is a subsidiary of Exela Technologies. (Afft, para.1) **Second**, the email signatures of McCone, Debbie Cole and Betty Smith all include Exela Technologies and Exela Technologies website (exelatech.com). (Afft, para. 2 ) **Third**, McCone received an email stating "Corporate Communications" concerning open enrolment for medical benefits which include Exela Technologies. In addition, there is an attachment to the email that state "**Exela's 2020 Annual Open Enrollment Frequently Asked Questions"** and the attachment state at the bottom "Exela Technologies, Inc. and its subsidiaries ("Exela") offer you group health plan coverage through the Plan." (Afft, para. 3) **Fourth**, the disability denial letter McCone recieved from Lincoln state "Employer Name: Exela Technologies". (Afft, para. 4)) **Fifth**, McCone receive a letter from Exela for travel to and from work during the Orange County, FL covid-19 stay at home orders that stated "Employee Travel for Essential Business Activities" and "This letter confirms that the holder is an employee of Exela Technologies, lnc. or one of its wholly owned subsidiaries" ("Exela"), and has been designated by Exela as an "Essential Critical lnfrastructure Worker"…" (Afft, para. 5) **Sixth**, McCone's 2020 employee handbook was from Exela Technologies and it state:

"ALL REFERENCES TO "EXELA," "US," "OUR" OR THE "COMPANY" IN THIS HANDBOOK ARE MEANT TO INCLUDE EXELA TECHNOLOGIES, INC. AND ITS SUBSIDIARIES AND AFFILIATES. THE CONTENTS OF THIS HANDBOOK ARE GUIDELINES ONLY AND SUPERSEDE ANY PRIOR HANDBOOK. THE CONTENTS OF THIS HANDBOOK APPLY TO ALL EMPLOYEES REGARDLESS OF DATE OF HIRE." (Afft, para. 6)

The handbook also state "If an employee calls in sick for three or more consecutive workdays or have a pattern of absence the employee may be required to provide their supervisor with a

doctor's note on the day the employee returns to work, to the maximum extent permitted by applicable law." (Afft, Exhibit "F" pg. 24) which is the same policy Betty Smith quoted as the bases to demand a Doctor's note from McCone. (Doc 33, para. 62 and Doc 35, answer to para. 62) The examples above are a few pertinent ones but aren't exhaustive. Given the control, power and influence that Exela Technologies have over Exela Enterprise and its employees, Exela Technologies could also be held liable under the "**alter ego**" doctrine. (see *United Steelworkers of America v. Connors Steel*, 855 F.2d 1499 (11th Cir. 1988))

***Agents and Decision Makers***

Given the action and admissions to the email quotes (e.g. Doc 33, para. 65, 83 and Doc 35, answers to para. 65, 83), it is clear that Debbie Cole and Betty Smith are agents of Defendants.

> "an agent is one who agrees to act on behalf of another, subject to the other's control. *See* RESTATEMENT (SECOND) OF AGENCY § 1 (1958) An employee is generally considered an agent of his or her employer. *See id.* at § 2…Once an agency relationship has been established, general agency principles also govern the circumstances in which the principal will be held liable for the acts of its agents under Title VII. *See Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408." **Goldsmith v. City of Atmore**, 996 F.2d 1155 (11th Cir. 1993).

Given that both Debbie Cole and Betty Smith made decisions concerning McCone employment status including but not limited to barring McCone from returning to work and placing conditions on McCone's return to work that lead to the termination of McCone's employment and the allegations in this complaint, both Debbie Cole and Betty Smith meets the definition of a decision maker. "*See Rozskowiak v. Vill. of Arlington Heights,* 415 F.3d 608, 612 (7th Cir.2005) (explaining that a decision maker is one who is involved in the process of making the employment decision at issue)." **Lewis v. City of Chicago,** 496 F.3d 645 (7th Cir. 2007).

## I WITH RESPECT TO COUNT ONE, JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF AS A MATTER OF LAW

In Count I, McCone is alleging retaliation under Title VII.

> "It is well established in this circuit that to successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir.2001); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir.2001); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir.1998)." **Weeks v. Harden Mfg. Corp.,** 291 F.3d 1307 (11th Cir. 2002).

### *Statutorily Protected Expression*

It is undisputed that McCone filed a complaint for sex based discrimination in Florida State Court against defendants (CASE NO.: 2014-CA-13224). (Doc 33, para. 19, 87 and Doc 35, answer to para. 19 and 87) The Title VII-related case (CASE NO.: 2014-CA-13224) alleging sex base discrimination was pending in state court when Defendants terminated McCone's employment on or about February 16, 2021. (Doc 33, para. 12, 87 and Doc 35, answer to para 12 and 87) In addition, McCone filed a complaint with The U.S. Equal Employment Opportunity Commisson (EEOC) alleging violations of Title VII, The Americans with Disabilities Act (ADA) and retaliation before Defendants terminated McCone's employment on or about Feb 16, 2021 and before the filing of this lawsuit. (Afft, para. 7)[3] The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." **EEOC v. Total System Services, Inc**., 221 F.3d 1171, 1174 (11th Cir. 2000). The first element has been met because McCone and Defendants were participating in Title VII related state court case alleging sex based discrimination when McCone's employment was

[3] The EEOC letter dated Jan 22, 2021 stated "Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge."

terminated notwithstanding that McCone had a pending complaint with the EEOC alleging violations of Title VII and the ADA.

***Adverse Employment Action***

It is undisputed that Defendants terminated McCone's employment on or about Feb 16, 2021. (Doc 35, answer to para 12) "Termination is a materially adverse action. See, e.g., Goldsmith, 513 F.3d at 1277." **Jefferson v. Sewon Am., Inc**., 891 F.3d 911, 924 (11th Cir. 2018) The Second element has been met.

***Adverse Action Was Causally Related To The Protected Expression***

McCone's Title VII-related state case and EEOC complaint against Defendants were both pending when Defendants terminated McCone's employment therefore, in close temporal proximity consequently, satisfying the causal link requirement. *See*, e.g., *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.") (citing *Brungart v. BellSouth Telecomm., Inc*., 231 F.3d 791, 798–799 (11th Cir. 2000)).

Furthermore, McCone is not just relying on close temporal proximity or some speculative theories because there is a direct link between McCone's Title VII-related state case and the issues in this case. It is undisputed that Defendants and their counsel Mr. Luis Santos file a motion in the United States District Court, Middle District Of Florida, Orlando Division (Case No.: 6:20-cv-01946-CEM-EJK) that had an email attached that McCone sent to Betty Smith concerning issues in this complaint. (Doc 33, para. 22, 28 and Doc 35, answers to para. 22, 28)

In the Florida State Title VII related CASE NO.: 2014-CA-13224, Defendants' counsel Mr. Luis Santos file a motion to stay and stated in that motion to stay "On March 2, 2015, while

concurrently litigating the same claims in this Court, McCone filed a Petition for Writ of Certiorari with the United States Supreme Court…" (Doc 14, exhibit "I") and stated at hearing that "Now, in March 2nd, he filed a writ of cer with the Supreme Court of the United States asking them to review the federal -- the Eleventh Circuit decision." (Doc 14, exhibit "K") It has been McCone's position that Mr. Luis Santos gave false testimony to obtain a stay of litigation that lasted over three years. In the federal case no.: 6:20-cv-01946-CEM-EJK, McCone stated in Count I for the Court to "Issue a judgment declaring that McCone had no case/writ/petition filed with the U.S. Supreme Court in March or May 2015." (6:20-cv-01946-CEM-EJK, Doc 25, pg. 31) If McCone had got the Court to declare that McCone had no case filed in U.S. Supreme Court, McCone could have had the state Title VII related case defaulted for obstructive false testimony and Mr. Luis Santos could have been disbarred therefore, Defendants and Mr. Luis Santos had a vested interest in getting the federal case no.: 6:20-cv-01946-CEM-EJK dismissed.[4] The email from McCone to Betty Smith was used by Mr. Luis Santos in litigation to help support his avocation of dismissal of the federal case no.: 6:20-cv-01946-CEM-EJK consequently creating a direct link between the protected activity (participation in the title vii related state case) and the adverse action (termination). Simply put, Defendants, Betty Smith and Mr. Luis Santos collaborated to have the federal case no.: 6:20-cv-01946-CEM-EJK dismissed thereby impeding McCone's ability to have Title VII related CASE NO.: 2014-CA-13224 defaulted in McCone's favor. Also note that the motion with the email attached was filed on **Feb 12, 2021** (Doc 33, para. 22, 28 and Doc 35, answer to para. 22, 28) and McCone's employment was

[44] "The ultimate sanctions of dismissal or default are justified by the repeated presentation of false testimony under oath…" **Figgie Intern., Inc. v. Alderman**, 698 So. 2d 563 (Fla. Dist. Ct. App. 1997).

"Florida Bar v. Smiley, 622 So.2d 465, 467 (Fla.1993) (disbarring attorney and reasoning that a lawyer's false testimony "defeats the very purpose of legal inquiry [and] ... is grounds for disbarment")" **The Florida Bar v. Lange**, 711 So. 2d 518 (Fla. 1998).

terminated on **Feb 16, 2021** (Doc 33, para. 81 and Doc 35, answer to para. 81) which is evidence that Defendants, Betty Smith and Mr. Luis Santos were all aware of the protected activity before McCone was terminated. The third element has been met. For the foregoing reasons, summary final judgment should properly be entered for Plaintiff as a matter of law with respect to Count One.

## II WITH RESPECT TO COUNT TWO, JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF AS A MATTER OF LAW

In Count II, McCone is alleging that Defendants violated §12112(d)(4)(A).

42 U.S. Code §12112(d)(4)(A) state:

> "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

It is undisputed that Defendants requested that McCone provide Defendants with a Doctor/medical provider's note as a condition to return to work. (Doc 33, para. 54, 65, 83 and Doc 35, answers to para. 54, 65, 83) The request for a doctor/medical provider's note as a condition to return to work is a disability-related inquiry. "And at least one circuit has found that requiring an employee to provide a doctor's note with a general medical diagnosis is a disability-related inquiry. *Conroy*, 333 F.3d at 95 (applying a liberal "may tend to reveal a disability" standard)." **Firster v. Athens Heart Center, P.C.**, 305 F. Supp. 3d 1368 (M.D. Ga. 2017)

The burden is on Defendants to prove that the request for a doctor/medical provider's note was job-related and consistent with business necessity. The Magistrate Judge noted in the report and recommendation that:

> "At this juncture, Plaintiff need only plausibly allege that the violation was a medical inquiry that is disability-related to make out his prima facie case— Plaintiff need not prove that the alleged improper inquiry was not job-related or

> not consistent with business necessity. *See Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316–1317 (11th Cir. 2009) ("To benefit from the **affirmative defense** [in 42 U.S.C. § 12113(a)], **an employer must prove** that the pertinent qualification standard is job-related and consistent with business necessity.") (emphasis added); *accord, e.g., Owusu-Ansah*, 715 F.3d at 1311 (11th Cir. 2013) (adopting and applying *Allmond* definitions to 42 U.S.C. § 12112(d)(4)(a))." (Doc 30, pg. 6)

McCone had no mental or physical illness or impairment that would have prevented McCone from performing his essential job functions nor did McCone pose a direct threat due to a medical condition on Dec 14, 2020 to Feb 16, 2021 (Afft, para. 8) therefore, Defendants had no reasonable belief based objective evidence obtained or reasonably available to Defendants prior to requesting McCone to provide a doctor/medical provider note that McCone's ability to perform his essential job functions will be impaired by a medical condition; or he will pose a direct threat due to a medical condition on Dec 14, 2020 to Feb 16, 2021 therefore, all elements has been met. For the foregoing reasons, summary final judgment should properly be entered for Plaintiff as a matter of law with respect to Count Two.

## III WITH RESPECT TO COUNT THREE, JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF AS A MATTER OF LAW

In Count III, McCone is alleging retaliation under ADA.

> "It is well established in this circuit that to successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." **Weeks v. Harden Mfg. Corp.,** 291 F.3d 1307 (11th Cir. 2002). (citations omitted)

> "The ADA provides that "`no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA].'" *Stewart,* 117 F.3d at 1287 (quoting 42 U.S.C. § 12203(a)). We review such claims under the same rubric used for Title VII retaliation claims. *See* Stewart, 117 F.3d at 1287 (citing *McNely,* 99 F.3d at 1075-77)." **Farley v. Nationwide Mut. Ins. Co**., 197 F.3d 1322 (11th Cir. 1999).

***Statutorily Protected Expression***

> "To establish that a plaintiff engaged in statutorily protected expression, we have held that a plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997) (citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989))." **Weeks v. Harden Mfg. Corp.,** 291 F.3d 1307 (11th Cir. 2002).

First, it is undisputed that McCone opposed Defendants request to provide a doctor/medical provider's note by not complying with the request which appears on the face of the termination letter. (Doc 33, exhibit "A" and Doc 35, answers to para. 12 and 81) In addition, the burden is on Defendants to prove that their request for a doctor/medical provider's note was job-related and consistent with business necessity and until that happens, Defendants are in violation of the ADA by default and McCone has met the first element.

Assuming arguendo, the Court find that Defendants didn't violate the ADA, McCone can still prevail because McCone opposed Defendants request to provide a doctor/medical provider's note due to his objectively reasonable belief that the request was in violation of the ADA.[5] McCone's objectively reasonable belief was grounded in part due to the fact that McCone had no mental or physical illness or impairment that would have prevented McCone from performing his essential job functions nor did McCone pose a direct threat due to a medical condition on Dec 14, 2020 to his termination on or about Feb 16, 2021 (Afft, para. 8) and Defendants refusal to adequately explain their basis for the request for a doctor/medical provider's note. (Afft para. 9 and 20) This is important because the burden is on the Defendants to articulate how their request for a doctor/medical provider's note was job-related and consistent with business necessity. For

[5] "While a plaintiff can prevail on a retaliation claim based on opposition to an employment practice that is not actually unlawful, we have to consider the controlling substantive law in this circuit when we assess whether a plaintiff's mistaken belief is objectively reasonable." **Butler v. Alabama Dep't of Transp.,** 536 F.3d 1209, 1212-13 (11th Cir. 2008)

example, McCone asked "what authority and for what business purpose do you have to demand that I undertake an arbitrary medical examination at my expense" (Doc 33, para 78 and see Doc 35, answer to para. 78) and McCone didn't receive an answer to his question. (Afft, para. 9) Also there is the problem of the conflicting and untruthful statements Defendants gave. For example, Defendants alleged that McCone was on "leave of absence (FMLA)" when McCone wasn't on leave or leave under FMLA. (Doc 33, para. 77 and Doc 35, answer to para. 77 and also see Afft, para. 4)

***Adverse Employment Action***

It is undisputed that Defendants terminated McCone's employment on or about Feb 16, 2021. (Doc 33, para 12, 81; Doc 35, answers to para. 12, 81 and Doc 33, Exhibit "A") "Termination is a materially adverse action. See, e.g., Goldsmith, 513 F.3d at 1277." **Jefferson v. Sewon Am., Inc**., 891 F.3d 911, 924 (11th Cir. 2018) The Second element has been met.

***Adverse Action Was Causally Related To The Protected Expression***

It is undisputed that McCone received a letter from Defendants dated January 20, 2021 and the letter state in part:

> "As of the date of this letter, we have not received the requested, and required, healthcare information from your or your health care provider regarding your continued absence. It is important that the Company receive the required medical documentation no later than the close of business on January 30, 2021, so that we are able to understand whether your continued absence may be eligible under our FMLA leave policy or otherwise as a reasonable accommodation." (Doc 33, para. 78, exhibit "G" and Doc 35, answer to para 78)

McCone's termination letter state in part:

> "You have been continuously absent from work since November 30, 2020. We requested on multiple occasions that you provide us with information from you and your health care provider regarding your medical condition and your need to be absent from work. However, as of the date of this letter, neither the Company nor Lincoln Financial has received any of the requested information. As we have repeatedly reminded you, without the required information, we are not able to

> evaluate whether your continued absence is eligible under our FMLA or other leave policies or otherwise as a reasonable accommodation under our applicable policies. In my January 20, 2021 correspondence, I advised you that we needed this information no later than January 30, 2021, otherwise you may be subject to employment action, including separation from employment. As you have not provided us with the requested information and you have not otherwise reached out to me to engage in the interactive process regarding your absences despite the Company's efforts to engage in the same, your employment with the Company has been terminated, effective February 16, 2021." (Doc 33, para 12, 81; Doc 35, answers to para. 12, 81 and Doc 33, Exhibit "A")

Defendants letter terminating McCone's employment demonstrates that the adverse action was directly related to the protected expression. McCone was subjected to the adverse employment action of employment termination because of his opposition to Defendants' request for a doctor/medical provider's note. The termination letter provides direct evidence of retaliation. McCone has met the third element. For the foregoing reasons, summary final judgment should properly be entered for Plaintiff as a matter of law with respect to Count Three.

## REASONS FOR THIS MOTION

McCone is bringing this motion because Defendants cant prove that their request for a doctor/medical provider's note was is job-related and consistent with business necessity and Defendants had no reasonable belief based objective evidence obtained or reasonably available to Defendants prior to requesting McCone to provide a doctor/medical provider note that McCone's ability to perform his essential job functions will be impaired by a medical condition or he will pose a direct threat due to a medical condition on Dec 14, 2020 to Feb 16, 2021 therefore, McCone is entitled to judgment in his favor as a matter of law.

> "If the prima facie case remains unrebutted, therefore, the plaintiff is entitled to judgment in her favor as a matter of law, provided that the trier of fact believes the evidence put forward to establish the prima facie case.[11] *See Combs*, 106 F.3d at 1528 ("If the trier of fact *believes* the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." (emphasis added)

(citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094))." **Walker v. Mortham**, 158 F.3d 1177 (11th Cir. 1998).

***Return to Work on Dec 14, 2020***

First is that McCone was suppose to return to work on Dec 14, 2020. McCone first exhibited covid-19 symptoms on Nov 28, 2020 (Afft para. 10) and telephonically called Debbie Cole the next day on Nov 29, 2020 and Debbie Cole instructed McCone to take off for the next two weeks which Defendants admit. (Doc 33, para. 38 and Doc 35, answer to para 38) A 14 day quarantine from Nov 28, 2020 would end on or about Saturday, Dec 12, 2020. McCone normally work Monday thur Friday therefore, the next work day would be Mon, Dec 14, 2020. McCone stated in the email attached to Defendants motion that "I am planning on return to work on Mon, Dec 14, 2020". (Doc 33, exhibit "B") (Doc 33, para. 28 and Doc 35, answer to para. 28) On Friday, Dec 11, 2020, Betty Smith sent McCone an email that stated "we expect you to bring a return to work note when you come back to work on Monday." (Afft para. 13) The next Monday after Friday, Dec 11, 2020 was Monday, Dec 14, 2020. It was well established between McCone and Defendants that McCone was suppose to return to work on Dec 14, 2020 after being in quarantined.

***Covid-19 and its effect on McCone***

Second, is the issue of covid-19 and its effect on McCone. McCone covid-19 symptoms started on Nov 28, 2020 (Afft para. 10) and by Mon, Nov 30, 2020 the only symptom McCone had was a mild headache that was managed by taking Tylenol (Afft para. 11) however, the headache wasn't debilitating therefore, without the Tylenol, McCone could still function normally. When McCone awaken on Weds, Dec 2, 2020, McCone had no headache without taking Tylenol. (Afft, para. 14) Simply put, from Mon, Nov 30, 2020 to McCone's termination on or about Feb 16, 2021, McCone had no physical impairment that prevented McCone from

properly performing his employment duties with Defendants (Afft para. 8 and 17) and there is no evidence to the contrary and Defendants with never be able to produce any truthful evidence to the contrary.

McCone symptoms started on Nov 28, 2020 and McCone was supposed to return to work approximately 16 days later on Mon, Dec 14, 2021. The CDC guidance stated before, Dec 14, 2020 that "Available data indicate that persons with mild to moderate COVID-19 remain infectious no longer than 10 days after symptom onset." (Doc 33, para, 59) therefore, Defendants can't make any argument supported by the facts and science that McCone was infectious and a threat to the workplace on Dec 14, 2020 approx 16 days after symptom onset.

***Contradictions and Misrepresentations***

First, McCone received an email from Betty Smith dated "Friday, December 11, 2020 5:28:26 PM" that state:

> "Attached is a copy of our Attendance policy which states: "If an employee calls in sick for three or more consecutive workdays or have a pattern of absence the employee may be required to provide their supervisor with a doctor's note on the day the employee returns to work" Since you were out more than 3 consecutive days, the company is requiring that you provide us with a note stating that you can return to work." (Afft para. 13 exhibit "H")

McCone didn't call out sick and was out more than three day on defendants instructions to be out two weeks. (Doc 33, para 38 and Doc 35, answer to para 38)

Second, after McCone was denied leave (Afft para. 4), Defendants continue to state McCone was on leave (Doc 33, para. 77 and Doc 35, answer to para. 77) After McCone was denied leave and after McCone informed Defendants that he wasn't on leave, Defendants continue to state that McCone was on leave and used the misrepresentation to demand medical documentations from McCone. (Doc 33, para. 78, exhibit "G" and Doc 35, answer to para. 78)

Third, the motion Defendants filed in the federal case Case No.: 6:20-cv-01946-CEM-EJK on Feb 12, 2021 state:

> "Clearly, COVID-19 did not stop Plaintiff from checking his mail given that he admits his symptoms had subsided by December 1 (before Motion to Dismiss was filed or mailed) and by December 7 he had "returned to [his] full workout routine which include[d][his] morning runs with no problems." *Id.*" (Doc 33, para. 22 and Doc 35, answer to para. 22)

By Defendants advocating that covid-19 didn't prevent McCone from checking his Post Office Box (before the 10 or 14 day quarantine was up) which places him inside a lobby around others (Afft para. 19), Defendants undermined their arguments for a doctor/medical provider's note.

> "*Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960 (10th Cir.2002) ("`The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job, either with or without an accommodation, because of fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs.'") (citations omitted)." **EEOC v. American Tool & Mold, Inc**., 21 F. Supp. 3d 1268 (M.D. Fla. 2014).

On December 12, 2020, McCone ran The Greg Warmoth Reindeer Run 5k from the starting line to the finish line without walking or stopping. (Afft para. 20) McCone's app using gps placed his average mile pace at 8:46 per mile (Afft exhibit "I"). Healthline.com indicates that McCone's average mile pace of 8:46 per mile is better than the avg mile pace for all age groups and genders. (https://www.healthline.com/health/average-mile-time#men-vs-women) Defendants are demanding doctor/medical provider notes from McCone while McCone is lifting weights and running in 5k. Defendants have nothing and this is why McCone is filing this motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff request that summary judgment be entered in whole or in part in his favor on all counts

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by U.S. Mail to Luis Santos, 101 East Kennedy Blvd, Suite 900, Tampa, Fl 33602 on this 23rd of May, 2022.

Henry L. McCone
P.O. Box 551908
Orlando, FL 32855
321-287-7824